Chester Rothstein (CR 1417)
Kenneth M. Bernstein (KB 0894)
David Mitnick (DM 0064)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x
                      :

TOWN & COUNTRY LINEN CORP.,   :

           Plaintiff,   :

          v.   :

P/KAUFMANN, INC.,   :

         Defendant.   :
- - - - - - - - - - - - - - - - - - - -x

**JUDGE CEDARBAUM**

**07 CV 3159**

Civil Action No.

**COMPLAINT**

RECEIVED
APR 19 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Demand for Jury Trial

Plaintiff Town & Country Linen Corp., through its attorneys, for its complaint against Defendant P/Kaufmann, Inc., states as follows:

## NATURE OF ACTION

1.    This Civil Action arises under the Copyright Laws of the United States, 17 U.S.C. §§ 101 et seq., and is brought to obtain a declaratory judgment that Defendant does not own any valid copyright that can be asserted against Plaintiff, and to remedy acts of fraud, breach of warranty, failure of consideration, and unjust enrichment.

367133.1

**THE PARTIES**

2.    Plaintiff Town & Country Linen Corp. ("T&C") is a corporation of the State of New York with its principal office at 295 Fifth Avenue, Suite 412, New York, New York 10016.

3.    Upon information and belief, Defendant P/Kaufmann, Inc. ("Kaufmann") is a corporation of the State of New York with its principal office at 3 Park Avenue, 16th Floor, New York, New York 10016.

4.    Upon information and belief, Kaufmann resides in this judicial district, is transacting and doing business within this judicial district, and is subject to the personal jurisdiction of this Court pursuant to the laws of New York and Rule 4 of the Federal Rules of Civil Procedure.

5.    This Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as a Federal question under the Copyright Laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1338, and as a matter of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   There exists an actual case or controversy with respect to whether Kaufmann is entitled to copyright protection and can assert a claim against T&C for copyright infringement, and all other claims are so related that they form part of the same case or controversy.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## **BACKGROUND**

7.     T&C is a wholesale supplier of home furnishing products and is involved in the design, manufacture, importation and sale of such items as draperies, linens, tablecloths, and, as pertinent to this Civil Action, shower curtains.

8.     T&C sells its products principally to department stores and retailers of home furnishing products such as Macy's; Bed, Bath & Beyond; Kmart; and Wal-Mart.

9.     Upon information and belief, Kaufmann is a wholesale supplier of home furnishing products, and is involved in the design, manufacture, importation and sale of such items as draperies, linens, tablecloths, and, as pertinent to this Civil Action, shower curtains.  Kaufmann is involved in similar business activities as T&C and sells its products to similar types of customers and, in many instances, to the same customers.

10.     Historically, on occasion, T&C and Kaufmann have transacted business with each other.

11.     On or before February 5, 2002, T&C contacted Kaufmann and asked it to provide T&C with a price quote for a Kaufmann fabric entitled Zephyr ("the Zephyr Fabric") that T&C wanted to use to manufacture shower curtains.  The Zephyr Fabric was a wrinkled fabric woven into a grid pattern of rectangles, with borders that did not line up exactly with the borders of adjacent rectangles.  A photograph of a close up of the Zephyr Fabric is attached hereto as Exhibit A.

12.    For some time thereafter, T&C was unsuccessful in obtaining the requested quote from Kaufmann.  In one communication, Kaufmann told T&C that it did not have any cost information on the Zephyr Fabric because it was an old fabric that Kaufmann had taken out of its line.

13.    As a result, T&C designed a different fabric pattern for shower curtains using a similar idea.  T&C's fabric, which it called Parachute, was a puffy fabric that was also woven into a grid pattern (the "Parachute Fabric").  However, in the case of the Parachute Fabric, the grid pattern was larger and comprised of squares, with borders that lined up exactly with the borders of adjacent squares.  T&C arranged for a factory it used in Turkey to manufacture samples of the Parachute Fabric.  A photograph of a close up of the Parachute Fabric is attached hereto as Exhibit B.

14.    T&C presented a sample of the Parachute Fabric sewn as a shower curtain (the "Parachute Shower Curtain") to its customer Bed, Bath & Beyond ("BB&B") with a proposal to supply it with shower curtains.  After its review and consideration, BB&B responded that it was interested in purchasing such products.  As a result, T&C worked with BB&B to finalize the product.  T&C also negotiated an agreement with BB&B for pricing and other terms for the supply of the Parachute Fabric product to BB&B.

15.    On or before April 17, 2002, a Kaufmann representative visited T&C's showroom and saw a sample of the Parachute Shower Curtain.  On information and belief, the Kaufmann representative believed the Parachute Fabric was similar to Kaufmann's Zephyr Fabric and reported this belief to Lee Kabat, a Kaufmann executive.

16.    On or about April 18, 2002, a meeting was held between Lee Kabat and T&C executives David Beyda and David Grazi. At the meeting, Mr. Kabat demanded that T&C stop selling the Parachute Shower Curtain because Kaufmann owned a copyright in the Zephyr Fabric.

17.    At the same meeting, on behalf of Kaufmann, Mr. Kabat threatened to sue T&C for copyright infringement and interfere with T&C's contract with BB&B by notifying BB&B that T&C was an infringer. Similar threats were also made on subsequent occasions.

18.    Based on Kaufmann's representations and threats, T&C agreed to pay a license fee to Kaufmann for its alleged copyright and to allow Kaufmann to act as a middleman in T&C's purchases of the Parachute Shower Curtains from T&C's factory in Turkey.

19.    In particular, T&C and Kaufmann entered into the following license agreement (the "License Agreement"). T&C agreed: (a) to introduce Kaufmann to T&C's manufacturer in Turkey, Leno Textile ("Leno"); (b) to order the Parachute Shower Curtains from Kaufmann, who would in turn purchase them directly from Leno; and (c) to pay Kaufmann a royalty of twenty percent (20%) of the price charged by Leno. In exchange, Kaufmann agreed: (a) not to sue T&C for copyright infringement; (b) not to interfere with T&C's contract with BB&B; and (c) not to source any other products from Leno that would be competitive with T&C products.

20.    The principal terms of the License Agreement were set forth in e-mail communications between David Beyda and Lee Kabat on April 19, 2002.  The License Agreement was never reduced to a formal document.

21.    Since 2002, T&C has performed all of its obligations under the License Agreement and has paid royalties to Kaufmann in excess of six hundred fifty thousand dollars ($650,000).

22.    T&C has recently discovered that Kaufmann misrepresented its ownership of a copyright in the Zephyr Fabric.  Upon information and belief, prior to entering into the License Agreement, Kaufmann applied to the United States Copyright Office ("Copyright Office") for a copyright registration on the Zephyr Fabric and was rejected.

23.    According to the records of the Copyright Office, Kaufmann (through its division Western Textile) applied for a copyright on the Zephyr fabric pattern on April 1, 2001, and was rejected by the Copyright Office on May 31, 2001.  In its letter of rejection, the Copyright Office stated, "We cannot register these works because they lack the artistic or sculptural authorship necessary to support such copyright claims. . . . [C]opyright does not protect familiar symbols and designs [or] minor variations of basic geometric shapes . . . ."  Copies of the application and official rejection are attached hereto as Exhibit C.

24.    Well after Kaufmann first began receiving payments from T&C on the Parachute products, on or about November 23, 2004, Kaufmann again applied for a

copyright on the Zephyr Fabric. On information and belief, Kaufmann was again rejected by the Copyright Office.

25. On information and belief, Kaufmann has not responded to the rejections in a timely manner or otherwise appealed such rejections, nor has it obtained any copyright registrations from the Copyright Office on the Zephyr Fabric.

26. Therefore, for nearly a year before entering into the License Agreement with T&C, and as reconfirmed thereafter, Kaufmann knew that it did not and could not own a copyright in the Zephyr Fabric and that the pattern existed in the public domain free for anyone to use.

27. At no time did Kaufmann disclose these facts to T&C.

28. On at least two occasions, most recently in February 2007, T&C identified third party products in the marketplace that were copies of the Parachute shower curtain that were being sold for substantially lower prices. Each time, T&C notified Kaufmann and requested that Kaufmann enforce its alleged copyright, but Kaufmann never did so.

29. As a result, T&C has suffered additional damage to its reputation and good will. Additionally, due to the burdens on pricing which resulted from the royalties it has been paying to Kaufmann, T&C has suffered further damage by being effectively shut out of its ability to compete in the mass market with the Parachute shower curtain.

30. Contemporaneous with the filing herewith, T&C has notified Kaufmann that it will no longer pay Kaufmann any royalties for its alleged copyright, and T&C has a

reasonable apprehension that Kaufmann will assert a claim of copyright infringement against T&C, as it did in 2002.

**COUNT I**
**DECLARATORY JUDGMENT**
**REGARDING LACK OF COPYRIGHT CLAIM**

31.    Paragraphs 1 through 30 are realleged as if fully set forth herein.

32.    Kaufmann does not hold a copyright registration or any other legal title in the Zephyr Fabric.

33.    The Zephyr Fabric is not copyrightable under 17 U.S.C. §§ 101 et seq. because it is functional and comprised of a basic geometric shape that lacks the necessary originality and artistic elements of authorship to support a copyright.

34.    The Copyright Office recognized that the Zephyr Fabric was not copyrightable and, on information and belief, twice rejected applications by Kaufmann to register it.

35.    On information and belief, Kaufmann has not responded to the rejections in a timely manner or otherwise appealed such rejections.

36.    T&C has been damaged and will continue to be damaged and subject to uncertainty in its business by reason of Kaufmann's actual and anticipated threats of copyright infringement, and T&C is entitled to a declaratory judgment that Kaufmann does not own a copyright in the Zephyr Fabric and cannot assert a claim against T&C for copyright infringement.

## COUNT II
## FRAUD UNDER NY LAW

37.     Paragraphs 1 through 30 are realleged as if fully set forth herein.

38.     Kaufmann's statements to T&C in April 2002 that Kaufmann owned the copyright in the Zephyr Fabric were misrepresentations that were false and known to be false by Kaufmann at the time it made them.

39.     Kaufmann made these false representations to T&C for the purpose of inducing T&C to enter into the License Agreement.

40.     T&C justifiably relied upon Kaufmann's false representations and, as a result, entered into the License Agreement and has paid Kaufmann, as per the terms of the License Agreement, a twenty percent (20%) royalty in exchange for using its alleged copyright.

41.     Kaufmann does not hold a copyright or any other legal title in the Zephyr Fabric.

42.     Kaufmann knew when it entered into the License Agreement with T&C that its Zephyr Fabric was not copyrightable and that it did not hold a federally registered copyright in the Zephyr Fabric.

43.     T&C has been damaged thereby and Kaufmann is liable for compensatory damages and restitution.

44.     By reason of the wrongfulness of Kaufmann's actions, T&C is also entitled to punitive and exemplary damages against Kaufmann.

## COUNT III
## BREACH OF WARRANTY UNDER NY LAW

45.     Paragraphs 1 through 30 are realleged as if fully set forth herein.

46.     Kaufmann's statements to T&C in April 2002 that Kaufmann owned a copyright in the Zephyr Fabric constituted a warranty of Kaufmann's good title in the copyright to such design.

47.     Kaufmann's warranty was a material term of the License Agreement.

48.     Kaufmann does not have a copyright in the Zephyr Fabric and has breached the License Agreement.

49.     T&C has been damaged thereby and Kaufmann is liable for compensatory damages and restitution.

## COUNT IV
## FAILURE OF CONSIDERATION UNDER NY LAW

50.     Paragraphs 1 through 30 are realleged as if fully set forth herein.

51.     Kaufmann's statements to T&C in April 2002 that Kaufmann owned the copyright in the Zephyr Fabric constituted a warranty of Kaufmann's good title to such design.

52.     Kaufmann's warranty was a material term of the License Agreement.

53.     Kaufmann's warranty was the consideration that induced T&C to enter into the License Agreement.

54.     Kaufmann does not have a copyright in the Zephyr Fabric and the License Agreement suffers from a failure of consideration.

55.     T&C has been damaged thereby, Kaufmann is liable for compensatory damages and restitution, and the License Agreement should be rescinded.

**COUNT V**
**UNJUST ENRICHMENT UNDER NY LAW**

56.     Paragraphs 1 through 30 are realleged as if fully set forth herein.

57.     Kaufmann's statements to T&C in April 2002 that Kaufmann owned the copyright in the Zephyr Fabric constituted a warranty of Kaufmann's good title to such design.

58.     Kaufmann's warranty was a material term of the License Agreement.

59.     Kaufmann does not have a copyright in the Zephyr Fabric and Kaufmann has breached the License Agreement.

60.     T&C has been damaged and Kaufmann has been unjustly enriched by the royalty payments made by T&C.

61.     Kaufmann is liable for restitution due to its unjust enrichment and the License Agreement should be rescinded.

367133.1                                    11

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief:

I.     Declaring that Kaufmann does not own a copyright in the Zephyr Fabric and cannot assert a claim against T&C for copyright infringement.

II.    Awarding T&C compensatory damages and/or restitution in an amount in excess of three million dollars ($3,000,000), plus pre-judgment interest.

III.   Awarding T&C punitive and exemplary damages in an amount in excess of one million dollars ($1,000,000).

IV.    Declaring the License Agreement rescinded.

V.     Awarding T&C its costs, expenses and disbursements of this Civil Action, including attorneys' fees.

VI.    Granting T&C such further relief as the Court may deem just and proper under the circumstances.

### **REQUEST FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby requests a trial by jury.

Dated:  April 19, 2007

By: _____

Chester Rothstein (CR 1417)
Kenneth M. Bernstein (KB 0894)
David Mitnick (DM 0064)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

Attorneys for Plaintiff
Town & Country Linen Corp.

# Exhibit A



LINEN

# Exhibit B



**Exhibit C**

# FORM VA

**For a Work of the Visual Arts**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**120231080**

VA _____ VAU

EFFECTIVE DATE OF REGISTRATION

Month _____ Day _____ Year _____

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

*Zephyr*

**NATURE OF THIS WORK ▼** See instructions

Fabric Design

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  **Title of Collective Work ▼**

If published in a periodical or serial give:  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**NAME OF AUTHOR ▼**

WESTERN TEXTILE

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR ⌐ Citizen of ▶ UNITED STATES
   ⌐ Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP**  Check appropriate box(es).  **See instructions**    Design on sheetlike material
☐ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR ⌐ Citizen of ▶
   ⌐ Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP**  Check appropriate box(es).  **See instructions**
☐ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**Year in Which Creation of This Work Was Completed**    2000    ◀ Year   This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**   Complete this information ONLY if this work has been published.
Month ▶ September   Day ▶ 1   Year ▶ 2000   ◀ Nation

---

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Western Textile
2 Park Avenue
New York, NY 10016

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
APR 15 2003

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

See instructions before completing this space.

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
                     • See detailed instructions.       • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

|  |  |
|---|---|
| EXAMINED BY | FORM VA |
| CHECKED BY | |
| ☐ CORRESPONDENCE<br>Yes | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼     **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

*See instructions before completing this space.*

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼     **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

WESTERN TEXTILE
2 PARK AVENUE
NEW YORK NY 10016

Area code and daytime telephone number ▶ ( 212 ) 292-3287     Fax number ▶ ( 212 ) 292-3393

Email ▶ ASIRKIN@PKAUFMANN.COM

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   WESTERN TEXTILE
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
ROBERT APPELBAUM     Date ▶ April 1, 2001

☞ **Handwritten signature (X)** ▼
x _(signature)_

| | |
|---|---|
| **Certificate will be mailed in window envelope to this address:** | **Name** ▼<br>WESTERN TEXTILE<br>**Number/Street/Apt** ▼<br>2 PARK AVENUE<br>**City/State/ZIP** ▼<br>NEW YORK, NY 10016 |

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1, 1999, the filing fee for Form VA is $30.

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—100,000
WEB REV: June 1999     ♻ PRINTED ON RECYCLED PAPER     ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71

May 31, 2001



WESTERN TEXTILE
ATTN: ROBERT APPELBAUM
2 PARK AVENUE
NEW YORK NY 10016

Control Number: 60-901-2181(W)
Re: CITRINE; KINCADE; ZEPHYR; DIAMOND EYELET; HALO;
CELESTIAL; MAKKO; MICA; GLORY; POLKA DOT; TATE STRIPE;
DANO; HORIZON; METAL; JUNO

**LIBRARY OF CONGRESS**

Dear Mr. Appelbaum:

We cannot register these works because they lack the artistic or sculptural authorship necessary to support copyright claims.

Copyright protects original works of authorship that are fixed in some physical form. In order to be copyrightable, artwork or sculpture must contain at least a minimum amount of original artistic material. Ideas or concepts which may be embodied in the work are not protected by copyright.

**Washington D.C. 20559-6000**

In addition, copyright does not protect familiar symbols and designs, minor variations of basic geometric shapes, lettering and typography, or mere variations in coloring.

We are filing these applications and deposits without registration. The nonrefundable filing fees have been applied to administrative costs.

Sincerely,
Geoffrey R. Henderson
Senior Examiner
Visual Arts Section
By:

Enclosures:
Circulars 31, 96 Sec. 202.1
SL-4a (Appeal Leaflet)