Chester Rothstein (CR 1417)
Kenneth M. Bernstein (KB 0894)
David Mitnick (DM 0064)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

```
– – – – – – – – – – – – – – – – – – –x
                                      :
                                      :     Civil Action No. 07 CV 3159 (MGC)
TOWN & COUNTRY LINEN CORP.,           :
                                      :
                Plaintiff,            :     ECF Case - Filed Electronically
                                      :
        v.                            :
                                      :
P/KAUFMANN, INC.,                     :
                                      :
                Defendant.            :
                                      :
– – – – – – – – – – – – – – – – – – –x
```

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

374195.1

1

**Table of Contents**

I.     Introduction............................................................................................................1

II.    The Allegations Of The Complaint.......................................................................3

III.   Standard Of Review...............................................................................................4

IV.    This Court Has Federal Subject Matter Jurisdiction Over T&C's Complaint For A
       Declaratory Judgment............................................................................................5

       A.     P/Kaufmann Can Bring a Claim for Copyright Infringement Against T&C Under
              § 411(a)........................................................................................................5

       B.     T&C Has Alleged Facts Which Prove There is a "Controversy" Under the
              Declaratory Judgment Act and The Supreme Court's New Test Under
              MedImmune...................................................................................................7

       C.     This Court Also Has Subject Matter Jurisdiction Over T&C's Complaint Under
              the "Reasonable Apprehension of Suit" Test...............................................10

       D.     P/Kaufmann's Filing of a Lawsuit Against T&C Last Week Confirms T&C's
              Reasonable Apprehension of Suit................................................................12

V.     T&C Has Adequately Plead All Of The Elements Of Its Fraud Claim Under The Federal
       Rules And New York Law....................................................................................13

       A.     Standard for Pleading Fraud Under Federal Rule 9(b).................................14

       B.     T&C Has Alleged More than Sufficient Facts to Meet the Pleading Standard.....14

       C.     T&C Justifiably Relied on P/Kaufmann's Affirmative Misrepresentation That It
              Had a Copyright Registration for Zephyr And Had No Reason to Question
              P/Kaufmann................................................................................................15

              1.     T&C Did Not Have a Duty to Investigate P/Kaufmann's Affirmative
                     Misrepresentation Under New York Law..........................................15

VI.    Conclusion............................................................................................................19

374195.1

# TABLE OF AUTHORITIES

## CASES

*Albert v. Title Guarantee & Trust Co.,*
277 N.Y. 421 (1938) ............................................................................................................15

*Asdourian v. Konstantin,*
77 F. Supp. 2d 349 (E.D.N.Y. 1999) ..............................................................................5, 15

*Black v Chittenden,*
69 N.Y.2d 665 (1986) .........................................................................................................18

*Calvin Stewart v. World Wrestling Federation, Ent., Inc.,* 0 2004 U.S. Dist. LEXIS
26533 (S.D.N.Y. Jan. 11, 2005)..........................................................................................12

*Cardtoons, L.C. v. Major League Baseball Players Ass'n,*
95 F.3d 959 (10th Cir. 1996) ................................................................................................8

*Century 21 v Woolworth Co.,*
181 A.D.2d 620 (1st Dep't 1992).........................................................................................18

*Clarus Transphase Sci., Inc. v. Q-Ray, Inc.,*
No. 06C4634, 2006 U.S. Dist. LEXIS 95005 (N.D. Ill. Oct. 6, 2006) .............................6

*Conley v. Gibson,*
355 U.S. 41 (1957).................................................................................................................5

*Cudemo v. Al & Lou Construction Co., Inc.,*
54 A.D.2d 995 (3d Dep't 1976)............................................................................................16

*DBC of New York, Inc. v. Merit Diamond Corp.,*
768 F. Supp. 414 (S.D.N.Y. 1991) .......................................................................................1

*Danann Realty Corp. v. Harris,*
5 N.Y.2d 317 (N.Y. 1959) ....................................................................................................16

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)................................................................................................................13

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.,*
438 U.S. 59 (1978).................................................................................................................5

*Durham Indus., Inc. v. Tomy Corp.,*
630 F.2d 905 (2d Cir. 1980).................................................................................................13

*Faulkner v. Nat'l Geographic Soc'y*,
211 F. Supp. 2d 450 (S.D.N.Y. 2002)................................................................6

*Fight for Children Inv. v. Flight Night, Inc.*,
Civ. No. 96-1818, 1997 U.S. Dist. LEXIS 24020 (D.D.C. Mar. 26, 1997)....................9

*Fina Research, S.A. v. Baroid Ltd.*,
141 F.3d 1479 (Fed. Cir. 1998)................................................................11

*Goshen v. Mutual Life Ins. Co.*,
Index No. 92/1304, 1997 N.Y. Misc. LEXIS 486 (N.Y. Sup.Ct., Oct. 21, 1997) ........16

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
748 F.2d 729 (2d Cir. 1984)................................................................16

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
263 B.R. 406 (S.D.N.Y. 2001)................................................................16

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
925 F.2d 556 (2d Cir. 1991)................................................................11

*Klein v. Computer Devices, Inc.*,
591 F. Supp. 270 (S.D.N.Y. 1984) ................................................................15

*Kregos v. Associated Press*,
3 F.3d 656 (2d Cir. 1993)................................................................13

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986)................................................................14

*Mallis v. Bankers Trust Co.*,
615 F.2d 68 (2d Cir. 1980)................................................................15, 16

*MedImmune, Inc. v. Genentech, Inc.*,
127 S. Ct. 764 (2007)................................................................7, 8, 9

*Ortiz v. Cornetta*,
867 F.2d 146 (2d Cir. 1989)................................................................5

*Ouaknine v. MacFarlane*,
897 F.2d 75 (2d Cir. 1990)................................................................14

*Paul Morelli Design, Inc. v. Tiffany & Co.*,
200 F. Supp. 2d 482 (E.D. Pa. 2002) ................................................................6

*Paulsen v. Lehman*,

374195.TOA

839 F.Supp. 147 (E.D.N.Y. 1993) ..................................................................5

*Prunte v. Universal Music Group,*
Civ. No. 06-0480, 2007 U.S. Dist. LEXIS 22865 (D.D.C. Mar. 30, 2007)......................................6

*Ritz Hotel, Ltd. v. Shen Mfg. Co.,*
384 F. Supp. 2d 678 (S.D.N.Y. 2005).........................................................10, 11

*Rodas v. Manitaras,*
159 A.D.2d 341 (1st Dep't. 1990) ...............................................................16

*Ross v. A.H. Robins Company, Inc.,*
607 F.2d 545 (2d Cir. 1979)........................................................................14

*SanDisk Corp. v. STMicroElectronics, Inc.,*
480 F.3d 1372 (Fed. Cir. 2007)..............................................................7, 9, 11

*Starter Corp. v. Converse, Inc.,*
84 F.3d 592 (2d Cir. 1996).......................................................................8, 11, 12

*Simanonok v. Simanonok,*
787 F.2d 1517 (11th Cir. 1986) ...................................................................5

*Slice of Pie Prods., LLC v. Wayans Bros. Entm't,*
392 F. Supp.2d 297 (D. Conn. 2005) ...........................................................13

*Swersky v. Dreyer & Traub,*
219 A.D.2d 321 (1st Dep't. 1996) ...............................................................18

*Teva Pharms. USA, Inc. v.   Novartis Pharms. Corp.,*
482 F.3d 1330 (Fed. Cir. 2007).................................................................7, 8

*Texas v. West Pub. Co.,*
882 F.2d 171 (5th Cir. 1989) .......................................................................8

*Todd v. Pearl Woods, Inc.,*
20 A.D.2d 911 (2d Dep't 1964), *aff'd,* 15 N.Y.2d 817, 257 (1965) ...............................15

*Town of West Hartford v. Operation Rescue,*
915 F.2d 92 (2d Cir. 1990)...........................................................................5

*Villager Pond, Inc. v. Town of Darien,*
56 F.3d 375 (2d Cir. 1995)...........................................................................5

## STATUTES

17 U.S.C. §411(a) ....................................................................................1, 2, 3, 4, 5, 6

28 U.S.C. § 2201) ..............................................................................................5, 7

Fed.R.Civ.P. 9(b) ............................................................................................13, 14

## MISCELLANEOUS

2 Nimmer on Copyright § 7.16[B][1][a][i] (1999) ...........................................................6

374195.TOA

## I.    Introduction

Plaintiff Town & Country Linen Corp. ("T&C") hereby opposes Defendant P/Kaufmann, Inc.'s ("P/Kaufmann") Motion to Dismiss.

The Complaint filed by T&C alleges in great detail how P/Kaufmann (i) threatened to sue T&C for copyright infringement; (ii) threatened to scuttle T&C's business dealings with one of the largest retailers in the United States, Bed Bath & Beyond ("BB&B"); (iii) intentionally deceived T&C by representing that it had a copyright in its "Zephyr" fabric and would enforce that copyright against T&C and its customers; and (iv) extracted an exorbitant twenty percent (20%) royalty from T&C for almost five years based on its affirmative misrepresentations to T&C.

P/Kaufmann speciously claims that it never threatened T&C with copyright infringement, and that instead, despite the black letter law that if a work is not copyrightable it is in the public domain (*see DBC of New York, Inc. v. Merit Diamond Corp.,* 768 F. Supp. 414 (S.D.N.Y. 1991)), T&C agreed to pay an exorbitant twenty percent (20%) royalty simply because T&C used P/Kaufmann's swatch as a basis for its own fabric. This denial is simply not credible in light of the first ill-fated copyright application P/Kaufmann filed immediately before the meeting in 2002 where it fraudulently threatened copyright infringement (attached as Exhibit C to the Complaint), and the second copyright application it filed in 2004, which P/Kaufmann now admits it filed and was similarly rejected by the Copyright Office as not copyrightable.  That T&C was under a threat of suit by P/Kaufmann cannot seriously be disputed, as P/Kaufmann filed suit just two weeks ago in New York State Supreme Court for claims of illegal "copying."[1] While P/Kaufmann's recent complaint appears to be a tactical move, it shows that the threat

---

[1] A copy of P/Kaufmann's new complaint, filed on June 20, 2007, is attached as Exhibit A to the July 5, 2007 Declaration of David Mitnick, Esq., which is submitted herewith (the "Mitnick Decl."). As will be discussed below, such claims will be found to be preempted by the Copyright Act.

perceived by T&C was real. As will be discussed below, T&C's Complaint details that P/Kaufmann's threat, as made, was for copyright infringement.

P/Kaufmann argues that dismissal of this case is appropriate because it does not own a valid copyright registration. While Plaintiff has now learned that this is true (and is the basis for Plaintiff's fraud claim), this fact does not support dismissal because there are two possible grounds for bringing a lawsuit for copyright infringement, as per the express language of 17 U.S.C. §411(a) of the Copyright Act. The first is when a party owns a copyright registration. The second, covers the situation here, where an application was rejected by the Copyright Office, and a party can in effect seek to overturn that rejection in court. *See* 17 U.S.C. §411(a). Since P/Kaufmann twice applied for a copyright registration on its Zephyr fabric, it cannot be disputed that P/Kaufmann could have, at any time thereafter (and continuing until the present), sued T&C for copyright infringement under §411(a).

P/Kaufmann argues that T&C should have known Zephyr was not protectable as a copyright. However, T&C had no reason to believe that P/Kaufmann fraudulently represented it had a copyright for Zephyr (since P/Kaufmann knew in 2001 that the Copyright Office had deemed Zephyr uncopyrightable). It was only after P/Kaufmann failed to make good on its earlier promise to enforce the copyright against others in the marketplace that T&C became suspicious. *See* Complaint, p. 7, ¶28. T&C had to go to great lengths (and expense) to search the Copyright Office archives, even hiring a professional research firm to investigate by means unavailable to T&C, before uncovering the fraud. *See generally* Mitnick Decl. That the Copyright Office deemed Zephyr uncopyrightable was something only P/Kaufmann knew, had a duty to disclose to T&C when the parties entered into the license, and that T&C could not have easily discovered.

At its core, this case is about a falsely alleged copyright P/Kaufmann knew could not be protected, and T&C's right to modify a design which existed in the public domain. This point is exemplified by the fact that P/Kaufmann's motion uses the word "copied" or "copying" repeatedly to refer to T&C's conduct and that P/Kaufmann had admittedly twice applied for a copyright registration on the design at issue (both of which were rejected by the Copyright Office as not copyrightable). It is further illustrated by the lawsuit P/Kaufmann filed last week against T&C in New York State Supreme Court alleging, *inter alia*, that under New York common law T&C is liable for unfair competition by "copying" and "misappropriating" P/Kaufmann's design. Thus, this Court need look no further than P/Kaufmann's own words and actions to contradict its jurisdictional challenge in this case, and to support T&C's position on this motion.

## II.     The Allegations Of The Complaint

T&C's Complaint sets forth in significant detail the relevant facts concerning its business dealings with P/Kaufmann and the fraud perpetrated by P/Kaufmann. Specifically, in early February 2002, T&C contacted P/Kaufmann[2] in order to receive a price quote for one of its fabrics entitled Zephyr, which was a two-ply fabric woven into a grid pattern of rectangles. *See* Complaint, p. 3, ¶11. T&C was not able to obtain the requested quote from P/Kaufmann because, as explained by P/Kaufmann's representative, it was an old fabric that had previously been removed from Kaufmann's line. *Id.* at 4, ¶12. As a result, T&C designed a shower curtain using a different fabric based on the Zephyr design called "Parachute." T&C moved forward and presented it to BB&B. *Id.* at 4, ¶14. Shortly thereafter, T&C and BB&B agreed on pricing terms, negotiated an agreement, and worked together to finalize the Parachute design.

---

[2] P/Kaufmann falsely states in its motion that Plaintiff claims that P/Kaufmann brought this fabric to T&C. It did not, thus making all the more implausible the claims that the twenty percent (20%) might have been paid for "added value."

3

On April 17, 2002, P/Kaufmann visited T&C's showroom and saw Parachute and believed it to be a copy of Zephyr. *Id.* at 4, ¶15. The next day, April 18, 2002, executives from both companies met to discuss this situation. *Id.* at 4, ¶15. P/Kaufmann immediately went on the attack and began to pressure, threaten, and intimidate T&C. P/Kaufmann's executive Lee Kabat told T&C that (i) P/Kaufmann owned a copyright in the Zephyr fabric (*id.* at 4-5, ¶16); (ii) P/Kaufmann would sue T&C for copyright infringement (*id.* at 5, ¶17); and most importantly, (iii) P/Kaufmann would scuttle T&C's business with BB&B by contacting BB&B and threatening copyright infringement and cutting off the supply. *Id.* at 5, ¶¶17, 19. Believing it had no choice but to meet the demands made by P/Kaufmann or risk immediate and irreparable damage to its reputation, the loss of BB&B as a customer, and a lawsuit for copyright infringement, (*id.* at 5, ¶¶ 17-21), an agreement was hastily reached.[3] T&C grudgingly agreed to pay P/Kaufmann an exorbitant twenty percent (20%) royalty on sales of Parachute in exchange for the right to use P/Kaufmann's Zephyr copyright. *Id.* at 5, ¶18.

T&C performed under the agreement for almost five (5) years, paying in excess of $650,000.00 to P/Kaufmann while the Parachute shower curtains were manufactured by T&C's own factory. *Id.* at 5, ¶18. All the while, P/Kaufmann secretly knew that it did not own a copyright and that Zephyr was not copyrightable. *Id.* at 5, ¶¶ 22, 23. Thus, T&C received nothing from P/Kaufmann, in exchange for paying hundreds of thousands of dollars to P/Kaufmann.

## III.    Standard Of Review

When deciding a Rule 12(b)(6) motion to dismiss, the Court must take all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

---

[3] Some of the terms of the parties' agreement were provided in an e-mail from David Beyda of T&C to Lee Kabat of P/Kaufmann on April 19, 2002. *Id.* at 6, ¶20.

374195.1

*Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir. 1989).  A complaint should not be dismissed

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Courts have

held that "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction."

*Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir. 1986), citing *Duke Power Co. v.*

*Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 70 (1978); *see also Paulsen v. Lehman,* 839

F.Supp. 147, 164 (E.D.N.Y. 1993)("Consideration of the issue of jurisdiction is not equivalent

. . . to an evaluation of the merits of a party's federal claim"), quoting *Town of West Hartford v.*

*Operation Rescue,* 915 F.2d 92, 99 (2d Cir. 1990).  The issue before the Court on a Rule 12(b)(6)

motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *Asdourian v. Konstantin,* 77 F. Supp. 2d 349, 353

(E.D.N.Y. 1999), quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.

1995)(citations omitted).

**IV.    This Court Has Federal Subject Matter Jurisdiction Over T&C's Complaint For A**
**Declaratory Judgment**

    This Court has federal subject matter jurisdiction over T&C's Complaint pursuant to the

Declaratory Judgment Act (28 U.S.C. § 2201) and the Copyright Act (particularly, and at least in

part, Section 411(a) thereto) because as soon as T&C stopped paying P/Kaufmann a license fee,

for the (non-existent) Zephyr copyright, P/Kaufmann could bring the previously threatened

action against T&C for copyright infringement.

**A.    P/Kaufmann Can Bring a Claim for Copyright Infringement Against T&C**
**Under § 411(a)**

    P/Kaufmann wrongly states that "... even if it wanted to do so, [it] could not bring a

copyright claim against T&C ...." (*See* Motion to Dismiss, p. 2, ¶ 1).  This is simply not true.

Section 411(a) of the Copyright Act expressly provides that:

In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form **and registration has been refused**, the applicant is **entitled to institute an action for infringement** if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a) (emphasis added).

Courts have uniformly held that the language of the statute is unambiguous and that a refusal to register by the Copyright Office is a proper ground to bring an action for copyright infringement. *See, e.g., Clarus Transphase Sci., Inc. v. Q-Ray, Inc.,* No. 06C4634, 2006 U.S. Dist. LEXIS 95005 (D. Ill. Oct. 6, 2006)(claim for copyright infringement allowed to proceed under §411(a) where basis for claim were applications covering pendant designs that were rejected by the Copyright Office); *Faulkner v. Nat'l Geographic Soc'y,* 211 F. Supp. 2d 450, 462 (S.D.N.Y. 2002)(holding that plaintiffs "may proceed with their infringement suit under [§]411(a) despite the Copyright Office's refusal to register certain of their works and without establishing that the Copyright Office's determination was erroneous."); *Paul Morelli Design, Inc. v. Tiffany & Co.,* 200 F. Supp. 2d 482, 484 (E.D. Pa. 2002)("[i]n order to sue for copyright infringement, a party must either (1) have obtained a registration of the copyright from the Register of Copyrights in the Library of Congress or (2) have applied for a registration and had the registration refused by the Register. 17 U.S.C. § 411(a). Morelli has satisfied the latter requirement.").[4]

---

[4] Courts have also used the language of §411(a) as justification for allowing parties to proceed with an action for copyright infringement based *solely* on the filing of an application, without a determination of registrability, on the basis that *either way* the plaintiff will be allowed to proceed with its action. *See, e.g., Prunte v. Universal Music Group,* Civ. No. 06-0480, 2007 U.S. Dist. LEXIS 22865 (D.D.C. Mar. 30, 2007)("Because the language of this provision allows a party to file an infringement suit regardless of whether the Copyright Office actually registers the copyright upon examination of the party's application, 'it makes sense under the 1976 Act to refer to application for registration as a condition to filing an infringement action.'"), quoting 2 Nimmer on Copyright § 7.16[B][1][a][i] (1999)(emphasis in original).

**B.    T&C Has Alleged Facts Which Prove There is a "Controversy" Under the Declaratory Judgment Act and The Supreme Court's New Test Under *MedImmune***

T&C has alleged facts in the Complaint which show there is a "case or controversy" between the parties stemming from past business dealings concerning the Zephyr fabric and P/Kaufmann's representations that it held a copyright in Zephyr.  The standard for determining a "case or controversy" was recently examined in great detail by the Supreme Court in *MedImmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764 (2007), and the Federal Circuit in *SanDisk Corp. v. STMicroElectronics, Inc.,* 480 F.3d 1372 (Fed. Cir. 2007).  Specifically, under *MedImmune,* the Supreme Court held that a "case or controversy" exists under the Declaratory Judgment Act (28 U.S.C. § 2201) where a party is put in the position of either infringing the alleged copyright holder's rights or continuing to make payments under a license.  *See SanDisk Corp. v. STmicroelectronics,* 480 F.3d at 1381.

In its motion, P/Kaufmann fails to even cite to the Supreme Court's decision in *MedImmune* which expressly overruled the former "reasonable apprehension of suit" test and held that Courts should examine declaratory jurisdiction under the "all-circumstances test."[5] According to the Supreme Court, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune,* 127 S. Ct. at 771; *see also Teva Pharms. USA, Inc. v.*

---

[5] Although the Second Circuit has not yet opined on the Supreme Court's holding in *MedImmune,* jurisdiction is proper in this case under either the "all circumstances" test discussed in *MedImmune* or the "reasonable apprehension of suit" test previously articulated by this Court.

*Novartis Pharms. Corp.,* 482 F.3d 1330, 1338 (Fed. Cir. 2007)("By following *MedImmune*, we recognize that we are not relying on our two-part reasonable-apprehension-of-suit test."[6]

     *MedImmune* is particularly relevant in this case because it presented analogous facts. Similar to here, after being accused of patent infringement, the plaintiff in *MedImmune* paid the defendant-licensor for approximately *three years* under a license agreement. *MedImmune*, 127 S.Ct. at 767.[7]  The plaintiff then brought a declaratory action against the defendant arguing that the reason it agreed to the license in the first place was to avoid the risk, and possible consequences, of a successful infringement suit by the defendant. *Id.* at 768.  Although the plaintiff conceded that it was currently free from apprehension of suit, since it was still a licensee in good standing, the Supreme Court held that whether or not it breached the license and whether or not it could be sued by the patentee, had no bearing on declaratory judgment jurisdiction where the plaintiff was originally forced to enter into the license, explaining that:

> "...the requirements of [a] case or controversy are met **where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid** or to challenge the legality of the claim."

*MedImmune*, 127 S.Ct. at 773 (emphasis added).

---

[6] The Federal Circuit further clarified in *Teva Pharms.* the importance of *MedImmune* stating that "because the Supreme Court in *MedImmune* cautioned that our declaratory judgment 'reasonable-apprehension-of-suit' test 'contradict[s]' and 'conflicts' with its precedent, these Federal Circuit tests have been 'overruled by ... an intervening ... Supreme Court decision.' [citations omitted]. Therefore, we follow *MedImmune's* teaching to look at 'all the circumstances' under *Maryland Casualty* to determine whether Teva has a justiciable Article III controversy." *Teva Pharms.,* 482 F.3d at 1339.

[7] The declaratory judgment standard adopted by the Federal Circuit is broadly applicable for intellectual property matters. *See, e.g. Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 965 (10th Cir. 1996), citing *Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) ("We are not without guidance, however, because the Federal Circuit provides a wealth of precedent in the intellectual property field and it has articulated fairly clear standards."); *see also Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 596 (2d Cir. 1996) ("Declaratory judgment actions involving trademarks are analogous to those involving patents, [citations omitted] and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks.").

The Federal Circuit in *SanDisk* adopted this reasoning and noted that the purpose of allowing a party to seek declaratory relief is to eliminate the catch-22 of forcing the plaintiff to either continue paying on a license or pursue an arguably illegal activity and risk being sued:

> The Supreme Court clarified that, although a declaratory judgment plaintiff may eliminate an "imminent threat of harm by simply not doing what he claimed the right to do[,] . . . **[t]hat did not preclude subject-matter jurisdiction [where] the threat-eliminating behavior was effectively coerced."** *Id.* "The dilemma posed by that coercion--putting the challenger to **the choice between abandoning his rights or risking prosecution--is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.** (citations omitted) (emphasis added)

*SanDisk,* 480 F.3d at 1378-1379 (emphasis added).

Here, T&C was faced with the same dilemma. After learning that P/Kaufmann had been rejected in its applications for a copyright registration, T&C had the choice of either continuing to pay P/Kaufmann a royalty, or risk itself and its customer from becoming a target for a copyright lawsuit by P/Kaufmann. P/Kaufmann's threat to sue T&C for copyright infringement never dissipated. Since T&C had continued performing under the parties' agreement and paying P/Kaufmann a royalty, P/Kaufmann's threats were still very much alive. *See, e.g., Fight for Children Inv. v. Flight Night, Inc*., Civ. No. 96-1818, 1997 U.S. Dist. LEXIS 24020, *4 (D.D.C. Mar. 26, 1997) (declaratory judgment jurisdiction was proper where threat of trademark infringement did not dissipate during three years of settlement negotiations). T&C could not take the risk of a lawsuit from P/Kaufmann since it could have had a devastating affect on its relationship with BB&B, not to mention its reputation with other significant retail customers.

Under the *MedImmune* test, all of the circumstances here show that there is a substantial controversy between T&C and P/Kaufmann of sufficient immediacy and reality to warrant the issue of a declaratory judgment.

374195.1

**C.     This Court Also Has Subject Matter Jurisdiction Over T&C's Complaint Under the "Reasonable Apprehension of Suit" Test**

Even if the Court decides to follow the "reasonable apprehension of suit test," the case law cited by P/Kaufmann supports T&C's position that T&C had a reasonable apprehension of suit. Most significantly, this Court's decision in *Ritz Hotel, Ltd. v. Shen Mfg. Co.,* 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005) (cited at on p. 9, ¶3 of Plaintiff's motion) supports this conclusion.

In *Ritz Hotel*, a trademark suit, the declaratory judgment plaintiff alleged in its complaint that during the course of discovery in opposition proceedings before the Trademark Trial and Appeal Board, counsel for the defendant called counsel for Ritz Hotel and claimed to have learned for the first time about sales of certain Ritz Hotel products in the U.S. The Complaint further alleged that defendant advised Ritz Hotel that, in light of this discovery, it "was contemplating filing an infringement" action. The defendant disputed this account, denied that it had ever threatened a lawsuit, and stated that the purpose of the phone call was to explore settlement of the parties' long-standing dispute. 384 F. Supp. 2d at 679-80.[8]

This Court recognized that the Second Circuit had articulated a two-pronged test for determining the existence of an actual controversy, namely (1) whether the defendants' conduct created a real and reasonable apprehension of liability on the part of the plaintiff; and (2) whether the plaintiff engaged in a course of conduct which brought it into adversarial conflict with the defendant. *Id.* at 682. In *Ritz Hotel*, Your Honor also recognized that the Second Circuit has instructed that "the finding of an actual controversy should be determined with some liberality." *Id.* As a result, in light of the liberal declaratory judgment standard in the Second Circuit, and since the "contemplation" of a trademark infringement action was allegedly the subject of a

---

[8] This Court recognized that declaratory judgment actions involving trademarks are analogous to those involving patents, and presumably would agree that the same principals would be equally applicable with respect to copyrights. *See* 384 F. Supp. 2d at 682 n. 1.

telephone conversation between the parties, this Court held that there was subject matter

jurisdiction:

> In the light of the Second Circuit's broad interpretation of
> reasonable apprehension of being sued, [citation omitted] although
> it is a close question, I conclude that Ritz Hotel has satisfied the
> *Starter* test.

*Id.* at 682.

Furthermore, like here, the defendant in *Ritz Hotel* argued on its motion that it had no

intention of filing a trademark suit against the plaintiff.  However, Your Honor concluded that

the defendant's testimony -- "elicited after the Complaint was filed in this case -- does not moot

the actual controversy that existed at the time the action was commenced."  *Id.* at 683.  Your

Honor stated that "[b]ecause this is not a case 'where the defendant has 'entered into a binding,

judicially enforceable agreement' not to sue... , the actual controversy is still alive." *Id.* at 683,

citing *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 562-63 (2d Cir. 1991)

(holding case was not moot where, during pre-suit settlement discussions, defendants identified

securities claims among potential causes of action, but later made post-filing representations to

the Court that they would not raise such claims); *Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d

1479, 1483-84 (Fed. Cir. 1998) (holding that letter written after commencement of suit stating

that defendant stated that it "has not and does not make any claim of infringement against

[plaintiff]", was insufficient to moot the reasonable apprehension created by earlier letters.  *See

also SanDisk,* 480 F.3d at 1383 ("[Defendant's] statement that it does not intend to sue does not

moot the actual controversy created by its acts.").

P/Kaufmann also cites the Second Circuit's decision in *Starter Corp. v. Converse, Inc.,*

84 F.3d 592, 596 (2d Cir. 1996) as supporting authority.  In *Starter,* the Second Circuit reversed

a district court's decision and held that it did in fact have jurisdiction over the plaintiff's claim

for declaratory relief under the Lanham Act, even though the plaintiff had never even used the

subject trademark. *Id.* at 595. The Second Circuit not only found jurisdiction proper, but

explained at length that the Declaratory Judgment Act should be liberally construed. *Id.* at 596

("Also persuasive in considering the applicability of this test is the policy animating the

Declaratory Judgment Act, which is to enable parties to adjudicate their disputes before either

suffers great damage. [...] Accordingly, in such a case, the finding of an actual controversy

should be determined with some liberality.").

    **D.    P/Kaufmann's Filing of a Lawsuit Against T&C Last Week Confirms T&C's Reasonable Apprehension of Suit**

Just last week, P/Kaufmann filed a lawsuit against T&C in New York State Court. *See*

Mitnick Decl. at ¶3. However, the new lawsuit against T&C is merely a thinly-pled copyright

action, which is preempted under the Copyright Act.

Specifically, the new lawsuit alleges that T&C wrongfully "copied" the Zephyr design.

*See* Mitnick Decl., Exhibit A, p 3, ¶16 ("T&C's representatives .... although not denying that

T&C copied the Zephyr Fabric, asserted that such copying was not improper."); *Id.* at p. 9, ¶52

("By virtue of selling, manufacturing and distributing the Parachute Shower Curtain, which was

copied directly from P/Kaufmann's Zephyr Fabric, ...").

However, as a basic matter of copyright law, P/Kaufmann cannot bring a lawsuit for

unfair competition in state court when the thrust of its claim, by its own admission, is the alleged

wrongful copying by T&C of its Zephyr design. *See, e.g., Calvin Stewart v. World Wrestling

Federation, Ent., Inc.,* 03cv2468, 2004 U.S. Dist. LEXIS 26533, *10 (S.D.N.Y. Jan. 11,

2005)("Courts have made clear, for instance, that although the Copyright Act does not protect

mere ideas alone, the scope of § 301 preemption includes state law claims with respect to

uncopyrightable as well as copyrightable material, precisely because if the law was otherwise,

'states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of materials not meeting federal statutory standards.'"); *Kregos v. Associated Press,* 3 F.3d 656, 665-66 (2d Cir. 1993)(unfair competition claim based on defendant's reproduction of plaintiff's baseball statistics form without outward sign of ownership was preempted by Copyright Act because "[t]he district court was correct to locate Kregos's unfair-competition claim in the former, preempted category; as Kregos has formulated his pleadings, the claim contains no element to qualitatively differentiate it from those areas protected by copyright.").[9] *Id.* at 666.

Similarly, in this case, there is nothing "qualitatively different" about P/Kaufmann's common law unfair competition claim - it is simply a dressed up claim for copyright infringement.  Thus, the new state court action is actually *proof positive* that P/Kaufmann has made good on its threat to sue T&C even despite its subterfuge by studiously avoiding the word "copyright."

## V.   T&C Has Adequately Plead All Of The Elements Of Its Fraud Claim Under The Federal Rules And New York Law

T&C has met the pleading standards imposed by Federal Rule 9(b) and New York law. P/Kaufmann argues that T&C did not provide sufficient facts to meet these standards, and that T&C could not have justifiably relied on P/Kaufmann's false claim that it had a copyright registration for Zephyr.  Neither argument has any merit because: (i) T&C provided a detailed

---

[9] The Supreme Court and courts in the Second Circuit have weighed in on this matter and held that where the Copyright Act comes into play a claim of unfair competition cannot stand. *See, e.g., Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 32-33 (2003)("The consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product ... The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.");  *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 919 (2d Cir. 1980)("To the extent that Tomy's unfair competition claim seeks protection against Durham's copying, it is a claim based on a right equivalent to 'exclusive rights within the ... scope of copyright.' As such, it is defeated by Section 301(a)."); *Slice of Pie Prods., LLC v. Wayans Bros. Entm't,* 392 F. Supp.2d 297, 313 (D. Conn. 2005)("[T]he clear import of *Dastar* is that any protection for the misappropriation of [e.g., a television show's] content comes from the Copyright Act, not from the Lanham Act.").

recitation of the relevant names, dates, and facts, including the content of the specific

conversations between the parties, forming the basis for its fraud claim in its Complaint; and (ii)

under New York law, the recipient of a fraudulent misrepresentation is entitled to rely on that

representation and has no duty to investigate -- particularly where, as here, the false

misrepresentation could not be easily ascertained.

A.    **Standard for Pleading Fraud Under Federal Rule 9(b)**

The standard for pleading fraud under Federal Rule 9(b) is as follows. "All averments of

fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with

particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred

generally." *See* Fed.R.Civ.P. 9(b). "Rule 9(b), however, must be read together with rule 8(a)

which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v.*

*MacFarlane,* 897 F.2d 75, 79-80 (2d Cir. 1990), citing *Ross v. A.H. Robins Company, Inc.,* 607

F.2d 545, 557 n.20 (2d Cir. 1979). Furthermore, allegations may be based on information and

belief when facts are peculiarly within the opposing party's knowledge. *Luce v. Edelstein*, 802

F.2d 49, 54 n.1 (2d Cir. 1986).

B.    **T&C Has Alleged More than Sufficient Facts to Meet the Pleading Standard**

T&C's Complaint provides sufficient facts to meet the heightened pleading standard for a

claim of fraud. The basic premise behind requiring a plaintiff to aver sufficient facts is to give

the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,

thus enabling the defendant to prepare a defense." *Ross*, 607 F.2d at 557. There is no question

that the Complaint provides P/Kaufmann with fair notice of the claims T&C has raised.

P/Kaufmann acknowledges as much by verifying and discussing many of the facts

presented by T&C in its Complaint. For example, pages 4-6 of Defendant's motion recite the

dates, names, and substance of conversations between T&C and P/Kaufmann as described in the

14

Complaint. Where a plaintiff has provided this type of detail in its Complaint, courts in the Southern District have denied motions to dismiss. *See Klein v. Computer Devices, Inc.,* 591 F. Supp. 270, 280 (S.D.N.Y. 1984); *Asdourian,* 77 F.Supp. 2d at 353.

### C.    T&C Justifiably Relied on P/Kaufmann's Affirmative Misrepresentation That It Had a Copyright Registration for Zephyr And Had No Reason to Question P/Kaufmann

Until recently, T&C had no reason to question P/Kaufmann's representation that it had a copyright registration in Zephyr. At the time it entered into the license, T&C had believed P/Kaufmann to be a reputable company. P/Kaufmann argues that even if it did falsely represent to T&C that it had a copyright registration, T&C should not have trusted P/Kaufmann and that T&C had a duty to investigate. While it is true in hindsight that T&C should never have trusted P/Kaufmann, this is not the law in New York.

### 1.    T&C Did Not Have a Duty to Investigate P/Kaufmann's Affirmative Misrepresentation Under New York Law

There is no duty under New York law for a recipient to investigate an affirmative misrepresentation as P/Kaufmann suggests. *See, e.g., Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir. 1980)("When matters are held to be peculiarly within defendant's knowledge, it is said that plaintiff may rely without prosecuting an investigation, as he has no independent means of ascertaining the truth...indeed some cases have imposed liability in situations in which plaintiff could have determined the truth with relatively modest investigation."), *citing Todd v. Pearl Woods, Inc.,* 20 A.D.2d 911 (2d Dep't 1964), *aff'd,* 15 N.Y.2d 817, 257 (1965) (failure to check defendant's representations against public records no bar to fraud claim); *Albert v. Title Guarantee & Trust Co.,* 277 N.Y. 421 (1938) (failure to investigate land before accepting assignment of interest in mortgage no bar to fraud claim); Restatement (Second) of Torts § 540 ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth,

374195.1

although he might have ascertained the falsity of the representation had he made an investigation.").

In fact, the cases relied on by P/Kaufmann do not even supports its own position that T&C should have investigated P/Kaufmann's false misrepresentation. For example, P/Kaufmann relies heavily on *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317 (N.Y. 1959) and a line of cases citing to *Danann,* including *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 737 (2d Cir. 1984) and *Rodas v. Manitaras,* 159 A.D.2d 341 (1st Dep't. 1990) (*see* Motion to Dismiss, pp. 13-14). However, the *Danann* line of cases are entirely distinguishable. In those cases, the party's allegedly false statements induced contracts where there were express disclaimers as to reliance. *See, e.g., Goshen v. Mutual Life Ins. Co.,* Index No. 92/1304, 1997 N.Y. Misc. LEXIS 486, 14-15 (N.Y. Sup.Ct., Oct. 21, 1997)(under *Danann* "where 'the party alleging fraud has made its own specific representation indicating that it is not relying on the alleged inducement, it is foreclosed from establishing its asserted reliance on the ground that it has misrepresented its true intention.'"); *see also Grumman Allied Indus.,* 748 F.2d at 735-736 (same). There are no such facts in this case.

Under New York law, courts have found that a party has a duty to investigate only in those extreme cases where the facts concerning the misrepresentation were plain for all to see. *See, e.g., Mallis,* 615 F.2d at 81 (holding that cases where courts found that "reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts."), citing *Cudemo v. Al & Lou Construction Co., Inc.,* 54 A.D.2d 995 (3d Dep't 1976) (buyer that filed action to recover damages for fraud based upon fact that her automobile could not fit into a garage, after making frequent inspections of the garage before signing, was not entitled to rely on representations that garage would accommodate her car); YOU TO?] *see also Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.),* 263 B.R. 406,

16

489 (S.D.N.Y. 2001)("While reliance must be justifiable, mere negligent failure to investigate adequately is insufficient to bar a claim of fraud.").

There was no reason for T&C to believe that P/Kaufmann affirmatively misrepresented that it had a copyright when the parties entered into the license in 2002. Furthermore, it would have been very difficult for T&C to discover that the Copyright Office had rejected P/Kaufmann's application for Zephyr in 2001. For example, as T&C has recently learned, the copyright application for Zephyr in 2001 was not made in the name of P/Kaufmann, but, instead was filed in the name of a company called "Western Textile", (which apparently is the name of a P/Kaufmann division). *See* Complaint, Exhibit C; Mitnick Decl. at ¶8. Additionally, the Copyright Office does not provide any database on its website to search in process or rejected applications. *See* Mitnick Decl. at ¶5.

When P/Kaufmann recently ignored T&C's requests to stop competitors from selling similar fabrics and T&C became suspicious of P/Kaufmann's representations, T&C first tried to find a relevant registration on the Copyright Office website, but then had to hire a specialized research firm to conduct an investigation. *See* Mitnick Decl. at ¶7. The search company had to scour the records of the Copyright Office and send a representative to the Copyright Office to search the one database (only available at the Copyright Office in Washington, D.C. and not accessible online), and reach out to its contacts at the Copyright Office to request that they investigate files which were not otherwise available. *See* Mitnick Decl. at ¶7. Even then, T&C was able to confirm that one application for a design called "Zephyr" was denied registration, but could not confirm the rejection of P/Kaufmann's second application in 2004, and had no way to

confirm that there was not a third application that had been granted under another name.[10] *See* Mitnick Decl. at ¶9.

At the very least, issues concerning the parties' respective knowledge of P/Kaufmann's applications raise issues of fact which, in similar cases, have been deemed inappropriate for summary dismissal. *See, e.g., Swersky v. Dreyer & Traub,* 219 A.D.2d 321, 327 (1st Dep't. 1996)(holding that availability of information was a question of fact and therefore "[s]ince these are issues which require resolution by the trier of fact, summary dismissal of the first cause was improper."), citing *Century 21 v Woolworth Co.,* 181 A.D.2d 620, 625 (1st Dep't 1992) ("[h]owever, we conclude that questions of fact exist as to whether the extent of the asbestos in the premises was peculiarly within Woolworth's knowledge and as to whether Century could have determined the true condition of the premises through means of 'ordinary intelligence'"), quoting *Black v Chittenden,* 69 N.Y.2d 665, 669 (1986)).

---

[10] P/Kaufmann argues that T&C owns many copyright registrations for its proprietary designs and has a "high level of sophistication in copyright matters." Motion to Dismiss, pg. 6, ¶2. This point is irrelevant. In any event, during the relevant time period, an administrative assistant at T&C simply registered T&C's designs as a ministerial task and in the ordinary course of its business. There are no persons on staff at T&C who are experts in the copyright area and T&C did not routinely consult counsel on such matters.

## VI.    Conclusion

For the foregoing reasons, T&C respectfully requests that P/Kaufmann's Motion to

Dismiss the complaint be denied in its entirety.

Dated:  July 5, 2007

By: _____
Chester Rothstein (CR 1417)
Kenneth M. Bernstein (KB 0894)
David Mitnick (DM 0064)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

Attorneys for Plaintiff
Town & Country Linen Corp.

374195.1