# Exhibit A

# PHILLIPS NIZER LLP



666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

**Michael S. Fischman**
212.841.0580
mfischman@phillipsnizer.com

JUN 2 6 2007

45 Essex Street
Hackensack, NJ 07601
201.646.1664
Fax 201.646.1764

www.phillipsnizer.com

June 22, 2007

Kenneth M. Bernstein, Esq.
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016

   Re: **Town & Country Linen Corp. v. P/Kaufmann, Inc.**
     **(07 Civ. 3159)**

Dear Mr. Bernstein:

  Given the pending motion to dismiss the federal court action filed by Town & Country against our client P/Kaufmann Inc., we have commenced an action in New York State Supreme Court with respect to, <u>inter alia</u>, your client's breach of the April 19, 2002 Agreement, and its sales and continued sales of the Parachute shower curtain. A courtesy copy of the Summons and Complaint is enclosed. I would ask that you let us know whether your firm will accept service on behalf of Town & County.

  Meanwhile, if you have any questions concerning this matter, please do not hesitate to contact me.

       Very truly yours,

       Michael Fischman

MF:jc

1009846.1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

P/KAUFMANN, INC.

                Plaintiff,

       -against-

TOWN & COUNTRY LINEN CORP.,

              Defendant.

Index No.: 602066/07

Date Purchased: 6/20/07

Plaintiff designates New York County as the place of trial.

The basis of venue is the business addresses of the parties

**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

JUN 20 2007

NOT COMPARED
WITH COPY FILE

To the above-named Defendant:

    **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      June 18, 2007

Defendant's Current Business Address:

Town & Country Linen Corp.
295 Fifth Avenue
New York, New York 10016

PHILLIPS NIZER LLP

By: _____
    Michael S. Fischman
    666 Fifth Avenue
    New York, New York 10103-0084
    (212) 977-9700
    Attorneys for Plaintiff
    P/Kaufmann, Inc.

1009573.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x
                                :

P/KAUFMANN, INC.,

                                :

                    Plaintiff,        :

                                :

              - v -                 :

                                :

TOWN & COUNTRY LINEN CORP.,

                                :

                   Defendant.    :

------------------------------------------------------------ x

Index No. **1002 0606** 07
               6/20/07

**COMPLAINT**

NEW YORK
COUNTY CLERK'S OFFICE
JUN 20 2007
NOT COMPARED
WITH COPY FILE

Plaintiff, P/Kaufmann, Inc. ("P/Kaufmann"), through its attorneys Phillips Nizer LLP, for

its complaint against Defendant, Town & Country Linen Corp. ("T&C"), alleges as follows:

## NATURE OF ACTION

1.       This is an action for breach of contract, unfair competition, unjust enrichment and

for an account stated resulting from T&C's breach of an April 19, 2002 agreement (the

"Agreement") which settled a business dispute involving T&C's admitted misappropriation of a

P/Kaufmann fabric design and concept for a shower curtain, and under which the parties have

operated for the past five years.

## THE PARTIES

2.       Plaintiff P/Kaufmann is a corporation of the State of New York with its principal

office at 3 Park Avenue, New York, New York 10016.

3.       Defendant T&C is a corporation of the State of New York with its principal office

at 295 Fifth Avenue, New York, New York 10016.

4.       Upon information and belief, T&C is a wholesale supplier of home furnishing

products and is involved in the design, manufacture, importation and sale of such items as

1007882.1

draperies, linens, tablecloths, and, as pertinent to this case, shower curtains. T&C sells its products principally to department stores and retailers of home furnishing products.

5.      P/Kaufmann is a wholesale supplier of fabrics, and T&C has purchased fabric from P/Kaufmann for use in the manufacture of T&C's home furnishing products.

6.      In 2001 P/Kaufmann was involved in the design, manufacture, importation and sale of such items as draperies, linens, tablecloths, and, as pertinent to this case, shower curtains to department stores and retailers of home furnishing products.

7.      Upon information and belief, P/Kaufmann and T&C have, since at least 2001, been involved in similar business activities and sold home furnishing products to similar types of customers and, in some instances, to the same customers.

8.      In or about late January, 2002, or early February, 2002, T&C's bath products designer visited the P/Kaufmann showroom and was shown by a P/Kaufmann employee, a fabric entitled "Zephyr" (the "Zephyr Fabric"), which the P/Kaufmann employee suggested as a novel shower curtain design. The T&C bath product designer requested and was provided with a sample version of the P/Kaufmann Zephyr Fabric, and also requested a price quote.

9.      On or about February 20, 2002, P/Kaufmann provided T&C with the requested price quote for the Zephyr Fabric.

10.     T&C did not order the Zephyr Fabric from T&C.

11.     Instead, T&C design personnel created a fabric pattern for shower curtains blatently and improperly copying the sample version of the Zephyr Fabric provided by P/Kaufmann, which T&C called "Parachute" (the "Parachute Fabric").

2

1007882.1

12.    T&C also arranged for a factory in Turkey to manufacture samples of a shower curtain using the Parachute Fabric (the "Parachute Shower Curtain") in an attempt to circumvent having to purchase the Zephyr Fabric from P/Kaufmann.

13.    T&C did not ever inform P/Kaufmann that it had created the Parachute Shower Curtain from the Zephyr Fabric, that it had arranged for a factory to manufacture the Parachute Shower Curtain, or that it offered to sell the Parachute Shower Curtain to Bed, Bath & Beyond.

14.    In or about early April, 2002, the P/Kaufmann employee who has shown the Zephyr Fabric to T&C's bath products designer in late January or early February, 2002, and who suggested it for use as a shower curtain, visited T&C's showroom and saw a display of the Parachute Shower Curtain. The P/Kaufmann employee immediately recognized the Parachute Shower Curtain as having been copied from P/Kaufmann's Zephyr Fabric shown to and sampled by T&C a few months earlier.

15.    The P/Kaufmann employee informed Lee Kabat, a P/Kaufmann executive, about the Parachute Shower Curtain she had seen at the T&C showroom. Thereafter, on about April 18, 2002, a meeting was held between Lee Kabat and T&C executives David Beyda and David Grazi.

16.    At the April 18, 2002 meeting, Mr. Kabat objected to T&C's misappropriation of the Zephyr Fabric and shower curtain concept. T&C's representatives, Messrs. Scalice and Grazi, although not denying that T & C copied the Zephyr Fabric, asserted that such copying was not improper.

17.    Notwithstanding their denial of any wrongdoing, one day after the meeting, on April 19, 2002, P/Kaufmann and T&C entered into the Agreement settling their dispute over T&C's copying of the Zephyr fabric and misappropriation of the concept to use it in a shower

3

curtain. The Agreement was memorialized in an e-mail between the parties, drafted by T&C

executive David Beyda, which reads as follows:

> In an effort to solve this issue in a positive and cost effective manner we have discussed and tentatively agreed to the following terms:
>
> (1) P/Kaufmann would manufacture a finished product for T&C at our factory [Leno, in Turkey].
>
> (2) Based on an L.D.P. to the port of [$]8.05 – P/Kaufmann would charge T&C [$]10.06 from the port or a 20% margin on the landed port price.
>
> (3) T&C would divulge the name of our factory [in Turkey] to P/Kaufmann under the understanding that P/Kaufmann would not manufacture competitive product to Town & Country at this factory.
>
> I hope this solves this issues and look forward to working with you in the future. Thank you, David Beyda.

A copy of the Agreement, as accepted by P/Kaufmann, is annexed hereto as Exhibit A.

18. Upon information and belief, T&C showed the Parachute Shower Curtain to, among others, the national retailer Bed, Bath & Beyond, and provided Bed, Bath & Beyond with a proposal to supply it with the product.

19. Upon information and belief, T&C received a first order from Bed, Bath & Beyond for the Parachute Shower Curtain on or about August 20, 2002.

20. Pursuant to the Agreement, P/Kaufmann received purchase orders from T&C for the Parachute Shower Curtain (based upon orders T&C received from Bed, Bath and Beyond), and P/Kaufmann filled those orders through the factory in Turkey, invoicing T&C.

21. P/Kaufmann has, for the last five years, honored its obligations under the Agreement, and the parties have operated under the Agreement continuously for those five years.

1007882.1

22.     P/Kaufmann has sold approximately $3.94 million of the Parachute Shower Curtains to T&C under the Agreement.

23.     On or about April 19, 2007, T&C, without any notice to P/Kaufmann, commenced suit in the United States District Court for the Southern District of New York, in an action entitled *Town & Country Linen Corp. v. P/Kaufmann, Inc.* (07 Civ. 3159) (the "Federal Court Complaint").

24.     Within the Federal Court Complaint, at paragraph 30, T&C "notified P/Kaufmann that it will no longer pay [P/]Kaufmann" as required under the Agreement.  T&C also sought (a) a declaration that P/Kaufmann had no copyright registration in the Zephyr Fabric (though P/Kaufmann readily acknowledges that fact), (b) an order rescinding the Agreement and (c) millions of dollars in damages.

25.     On June 1, 2007, acknowledging that it has no copyright registration in the Zephyr Fabric, P/Kaufmann filed a motion to dismiss a Federal Court Complaint for, *inter alia*, lack of subject matter jurisdiction.

26.     In or about early May, 2007, P/Kaufmann discovered that Bed, Bath & Beyond was selling a color of the Parachute Shower Curtain that had not been manufactured by P/Kaufmann pursuant to the Agreement.  Upon inspection of the Parachute Shower Curtain in the new color, P/Kaufmann discovered that it was manufactured by a factory in China, and not by the Turkish manufacturer, Leno (through P/Kaufmann), as required by the Agreement.

27.     Upon information and belief, T&C was working with the factory in China, in breach of the Agreement, since at least January, 2007, if not earlier.

5

28.    At no time did T&C advise P/Kaufmann either that Bed, Bath, & Beyond had ordered a new color of the Parachute Shower Curtain or that T&C was manufacturing the Parachute Shower Curtain in China.

29.    P/Kaufmann has not received any orders from T&C for the Parachute Shower Curtain since February 15, 2007, and upon information and belief, Bed, Bath & Beyond has ordered the product from T&C, which orders T&C has filled or is filling by manufacturing through the factory in China, with Leno, or elsewhere, in breach of the Agreement.

30.    Bed, Bath & Beyond continues to sell the Parachute Shower Curtain.

## FIRST CAUSE OF ACTION:  ACCOUNTING

31.    P/Kaufmann repeats and realleges each of the allegations set forth in paragraphs 1 through 30 hereof with the same force and effect as if fully set forth herein.

32.    T&C has breached the Agreement by arranging to manufacture the Parachute Shower Curtain by parties other than P/Kaufmann.

33.    By virtue of these acts, T&C has misappropriated orders from P/Kaufmann, sold the Parachute Shower Curtain and collected the proceeds from such sales, which proceeds are thereby depriving P/Kaufmann of its rightful payments under the Agreement.

34.    T&C has failed to pay and has stated its intention to continue to fail to pay any amounts to P/Kaufmann required under the Agreement.

35.    P/Kaufmann is without knowledge of orders received by T&C for the Parachute Shower Curtain, orders placed by T&C for the Parachute Shower Curtain, or the amount due to P/Kaufmann under the Agreement, and cannot independently obtain such knowledge or ascertain those amounts.

6

1007882.1

36.    By reason of the foregoing, T&C is indebted to P/Kaufmann for money had and received by T&C, which should have been received by P/Kaufmann under the Agreement, all to P/Kaufmann's damages in a sum as yet undetermined.

37.    P/Kaufmann is thus entitled to an accounting from P/Kaufmann for all sales and proceeds of sales of the Parachute Shower Curtain and to payment over by T&C to P/Kaufmann of proceeds from such sales as required under the Agreement.

38.    P/Kaufmann lacks an adequate remedy of law.

## SECOND CAUSE OF ACTION:  BREACH OF CONTRACT

39.    P/Kaufmann repeats and realleges each of the allegations set forth in paragraphs 1 through 30 hereof with the same force and effect as if fully set forth herein.

40.    T&C has wrongfully and intentionally refused to honor the Agreement.

41.    Accordingly, T&C is indebted to P/Kaufmann in an amount to be determined at trial, but currently believed to be no less than $150,000, and which amount is increasing with each order that T&C receives for the Parachute Shower Curtain from Bed, Bath & Beyond, and others.

## THIRD CAUSE OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

42.    P/Kaufmann repeats and realleges each of the allegations set forth in paragraphs 1 through 30 hereof with the same force and effect as if fully set forth herein.

43.    T&C's actions and conduct described herein are in violation of the Agreement and of the implied covenants of good faith and fair dealing contained in said Agreement.

44.    Accordingly, T&C is indebted to P/Kaufmann in an amount to be determined at trial, but currently believed to be no less than $150,000, and which amount is increasing with

7

each order that T&C receives for the Parachute Shower Curtain from Bed, Bath & Beyond, and others.

## FOURTH CAUSE OF ACTION: UNFAIR COMPETITION

45.    P/Kaufmann repeats and realleges each of the allegations set forth in paragraphs 1 through 30 hereof with the same force and effect as is fully set forth herein.

46.    T&C's misappropriation of the Zephyr Fabric design and shower curtain concept, and the skills, expenditures and labor associated therewith, constitutes unfair competition.

47.    T&C's actions described herein with respect to the design, manufacture and sale of the Parachute Shower Curtain were undertaken in bad faith.

48.    T&C's manufacture, sale and distribution of the Parachute Shower Curtain in violation of the Agreement, which settled the parties' dispute as of April 19, 2002, constitute unfair competition and unjustifiable interference and encroachment on P/Kaufmann's commercial prospects and opportunities.

49.    The foregoing unauthorized acts of misappropriation and unfair competition have resulted in P/Kaufmann being damaged in an amount to be determined at trial, but believed to be not less than $1,000,000.

50.    Whereas, the conduct of T&C was wantonly, willfully and fraudulently calculated to misappropriate P/Kaufmann's property rights, P/Kaufmann demands punitive damages of $10,000,000.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT

51.    P/Kaufmann repeats and realleges each of the allegations set forth in paragraphs 1 through 30 hereof with the same force and effect as if fully set forth herein.

1007882.1

52.     By virtue of selling, manufacturing and distributing the Parachute Shower Curtain, which was copied directly from P/Kaufmann's Zephyr Fabric, T&C has been unjustly enriched at the expense of P/Kaufmann.

53.     Equity and good conscience compel that T&C make restitution to P/Kaufmann of the profits it has earned on the manufacture, sale and distribution of the Parachute Shower Curtain in violation of the Agreement in an amount to be determined at trial, but which is believed to be not less than $1,000,000.

WHEREFORE, plaintiff demands judgment against defendant as follows:

(A)     On the First Cause of Action, against T&C, directing T&C to account for and pay over to P/Kaufmann the proceeds due under the agreement for all sales by T&C of the Parachute Shower Curtain; and

(B)     On the Second and Third Causes of Action, against defendant T&C, for damages in any amount to be determined at trial.

(C)     On the Fourth and Fifth Causes of Action, against defendant T&C, for damages in an amount to be determined at trial, but no less than $1,000,000 and punitive damages in the sum no less than $10,000,000.

(D)     Against defendant T&C, for interest, costs and counsel fees and expenses, as well as such other and further relief as the Court deems proper.

Dated: New York, New York
       June 19, 2007

                              Yours, etc.

                              PHILLIPS NIZER LLP

                              By:_____
                                  Michael S. Fischman
                                  666 Fifth Avenue
                                  New York, NY  10103-0084
                                  (212) 977-9700

1007882.1                           9

Exhibit A

From:        Kabat, Lee [LKabat@PKaufmann.com]
Sent:        Friday, April 19, 2002 3:38 PM
To:          David J Beyda
Cc:          Kaplan, Michael; Fiori, Terry; Kaufmann, Ron; Appelbaum, Bob
Subject:     RE: Zephyr

Dear David,
Thank you . I can agree to all points of this this proposal provided we have not had a pre-existing relationship with your supplier. If that would be the case I would supply you with the appropriate documentation.

This does solve our problem. I hope we can find projects of mutual benefit in the future.
Kindest regards,
Lee Kabat

-----Original Message-----
From: David J Beyda [mailto:DBeyda@tncliving.com]
Sent: Friday, April 19, 2002 3:20 PM
To: Lee Kabat (E-mail)
Cc: David Grazi; Frank Scalice
Subject: Zephyr


Dear Lee,
     In an effort to solve this issue in a positive and cost effective manner we have discussed and tentatively agreed to the following terms:
     1-P/Kaufman would manufacture a finished product for T & C at our factory.
     2-Based on an L.D.P to the port of 8.05- P/Kaufman would charge T & C 10.06 From the port. Or a 20% margin on the landed port price.
     3-T & C would divulge the name of our factory to P/ Kaufmann under the understanding that P/Kaufman would not manufacture competitive product to Town and Country at this factory.

     I hope that this solves the issue and I look forward to working with you in the future. Thank you, David Beyda

1