UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

TOWN & COUNTRY LINEN, CORP., :

Plaintiff, : (ECF Case -- Filed Electronically)

-against- : Case No.: 07 CV 3159 - MGC

:

P/KAUFMANN, INC.,

:

Defendant.

:

-------------------------------------------------------------x

DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(b)(1), 12(b)(6) AND 9(b)

***PHILLIPS NIZER LLP***
***666 Fifth Avenue***
***New York, N.Y. 10103-0084***
***(212) 977-9700***
***Attorneys for Defendant***
***P/Kaufmann***

Table of Contents

Page

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Whether or Not The Second Circuit Would Interpret MedImmune As Impacting The "Reasonable Apprehension Of Suit" Test, There Is No Current Or Real Controversy Over A Copyright In Zephyr To Warrant A Declaratory Judgment – The Claim At Issue Is Five Years Old. .......... 3

a. The Existence of a Claimed "License" For Parachute Is Irrelevant. .......... 6

b. The Failure Of T&C To Raise Its Claimed Recent Discovery About Zephyr Is Fatal To The Jurisdictional Claim .......... 7

c. T&C Ignores the 2004 Rejection Of The Copyright Registration For Zephyr. .......... 8

II. A Copyright Claim Is Theoretical Only .......... 9

III. The Court Should Dismiss The Complaint Under Its Discretionary Authority .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

### CASES

*Atari, Inc. v. Oman*, 979 F.2d 242 (D. C. Cir. 1992) ........ 10

*Beverly Hills Design Studio (N.Y.) Inc. v. Morris,* 1989 WL 85867 (S.D.N.Y. June 26, 1989) ........ 10

*Coach, Inc. v. Peters*, 386 F. Supp. 2d 495 (S.D.N.Y. 2005) ........ 10

*Evans Medical Ltd. v. American Cyanamid Co.*, 980 F.Supp. 132 (S.D.N.Y. 1997) ........ 11

*Fight For Children, Inc. v. Fight Night, Inc.,* 1997 WL 148643 (D.D.C., March 26, 2007) ........ 5

*Gemveto Jewlery Co. v. Jeff Cooper, Inc.*, 568 F.Supp. 319 (S.D.N.Y. 1983) ........ 10

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ........ 4, 9

*MedImmune Inc. v. Genentech, Inc.*, 127 S.Ct. 764 (2007) ........ 2, 4, 6, 7, 9

*MedImmune, Inc. v. Genentech, Inc.,* 2004 WL 3770589 (C.D.Cal. April 26, 2004) , *aff'd,* 427 F.3d 958 (Fed Cir. 2005), *reversed*, 127 S.Ct. 764 (2007) ........ 4

*Public Serv. Comm'n v. Wycoff Co.*, 73 S.Ct. 236 (1952) ........ 11

*Ritz Hotel, Ltd. v. Shen Mfg. Co.,* 384 F.Supp.2d 678 (S.D.N.Y. 2005) ........ 3, 5

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ........ 4, 8, 9

*Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361 (Fed. Cir. 2004) ........ 8

*Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991) ........ 11

*Starter Corp. v. Converse, Inc.*, 84 F.3d 592 (2d Cir. 1996) ........ 5

*Super Sak Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054 *cert. denied*, 516 U.S. 1093 (1996) ........ 11

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330 (Fed. Cir. 2007) ........ 2, 5, 9

### STATUTES

Fed. R. Civ. P.9(b) ........ 1

Fed. R. Civ. P. 12(h)(3) .................................................. 10

28 U.S.C. § 2201 .................................................. 2

**MISCLLANEOUS**

N.Y. Jur. 2d *Fraud and Deceit* § 160 .................................................. 1

iii

1011451.TOA

## PRELIMINARY STATEMENT

The opposition of Plaintiff Town & Country Linen Corp ("T&C") to Defendant P/Kaufmann Inc.'s ("P/Kaufmann's") motion to dismiss confirms that there is no subject matter jurisdiction in this case. Declaratory judgment actions are not vehicles to test theoretical or hypothetical disputes, but real and immediate ones, and T&C simply fails to allege the existence of an immediate and real controversy between the parties to warrant the declaratory judgment it seeks. It is also quite clear that T&C has not pleaded the justifiable reliance element of fraud in Count II with the requisite particularity required by Rule 9(b)[1], and has not responded at all to the portion of P/Kaufmann's motion addressed to Counts III, IV and V of the Complaint. Because the defects relating to those counts can theoretically be addressed in an amended pleading, this reply focuses on P/Kaufmann's motion to dismiss the declaratory judgment claim in Count I, which cannot possibly be cured.

T&C asserts that, "At its core, this case is about a falsely alleged copyright [in the "Zephyr" fabric that] P/Kaufmann knew could not be protected." (T&C Memorandum at 3) Thus, T&C acknowledges that this case is, "at its core", a claim that (after a one day meeting and, apparently, no further inquiry) it entered into the April 19, 2002 settlement agreement (the "Agreement"), in reliance upon an alleged misstatement by a P/Kaufmann representative. The fact that T&C adds the word "copyright" to a (specious) fraud allegation does not elevate the action to a copyright claim, which confers jurisdiction on this Court.

---

1 For example, T&C fails to distinguish this case from those brought by sophisticated businesspeople engaged in major transactions who enjoy access to critical, publicly available information but fail to take advantage of that access. Quoting, 60A N.Y. Jur. 2d *Fraud and Deceit* § 160 (emphasis supplied):

> While there is considerable support in earlier cases [such as those cited by T&C] for the view that the mere fact that public records, if examined, would show a representee that representations of fact are false does not preclude him or her from establishing fraud … <u>the weight of authority reflected in more recent decisions appears to be that a representee is under a duty to investigate available public records and cannot recover for a misrepresentation if he or she could have ascertained its falsity by a reasonable examination of such records</u>.

Attached to T&C's opposition (Declaration of David Mitnick dated July 5, 2007, Exhibit A) is a recently filed state court Complaint by P/Kaufmann asserting breach of contract (violation of the Agreement), together with claims of unjust enrichment and unfair competition. The Court is respectfully referred to the Exhibit for a full exposition of the underlying dispute, which makes it eminently clear that it is a simple commercial dispute and most definitely not a claim about copyright infringement.[2]

Simply put, the possibility of a claim for copyright infringement over T&C's Parachute fabric based on the possibility that P/Kaufmann will, years after the fact, seek to contest the rejection of its copyright application in Zephyr and bring a copyright infringement action against T&C is nothing but an abstract and farfetched theory. The T&C Complaint must be dismissed for lack of subject matter jurisdiction, and the dispute between the parties allowed to proceed in the pending state court action.

## ARGUMENT

To maintain an action under the Declaratory Judgment Act (28 U.S.C. § 2201) ("DJA"), a party needs to file an "appropriate pleading" that establishes the existence of an actual "case or controversy" between parties having adverse legal interests. Analysis of the "case or controversy" requirement is necessarily tied to the facts of each case and whether those facts reveal some actual injury in fact to the plaintiff. *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007). The question at issue here is whether the T&C Complaint describes a dispute concerning a copyright in Zephyr "of sufficient immediacy and reality" to warrant the issuance of a declaratory statement. *MedImmune Inc. v. Genentech, Inc.*, 127 S.Ct. 764,

---

2 T&C's claim that the state court Complaint is "proof positive that P/Kaufmann has made good on its [April 2002] threat to sue T&C" (T&C Memorandum at 13), and that certain claims in that pleading are preempted by the Copyright Act, ignore the essence of that suit and T&C's admitted breach of the Agreement. For purposes of this motion, however, the state court Complaint is actually "proof positive" that P/Kaufmann is <u>not</u> asserting a claim of copyright infringement.

772 (2007). Based on all the circumstances, the answer appears obvious: the five year old alleged claim of copyright is insufficient to form the basis of a federal action for declaratory relief.

**I. Whether or Not The Second Circuit Would Interpret *MedImmune* As Impacting The "Reasonable Apprehension Of Suit" Test, There Is No Current Or Real Controversy Over A Copyright In Zephyr To Warrant A Declaratory Judgment – The Claim At Issue Is Five Years Old.**

*MedImmune* and the recent Federal Circuit cases interpreting it do not expand the powers given to the district courts by Congress under the DJA, and it certainly did not affect the Constitutional requirement of an Article III case and controversy. In fact, those cases underscore the critical focus in declaratory judgment cases on the dispute as it exists between the parties at the time the action is commenced. Each case cited in the T&C opposition involves lively debates and exchanges between the parties concerning existing, a federally-granted intellectual property rights just prior to the filing of a complaint. Allegedly lying about the existence of a copyright on one occasion five years ago, as T&C claims, hardly forms the basis of a declaratory judgment action under either the Federal Circuit cases following *MedImmune*, or the Second Circuit test described in *Ritz Hotel, Ltd. v. Shen Mfg. Co.,* 384 F.Supp.2d 678 (S.D.N.Y. 2005).

Even should the Second Circuit ultimately accept *MedImmune* as rejecting the "reasonable apprehension of suit" test (see P/Kaufmann Memorandum in Support at 9-10), that change would not have any impact on the result in this case. The analysis under *MedImmune* remains focused on the conduct of the parties and upon claims that the holder of the patent, trademark or copyright is asserting at the time litigation is commenced. In this regard, *MedImmune* simply restated the decades-old standard for a proper Article III claim under the DJA:

> Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interest'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon hypothetical state of facts. *Id.,* at 240-241, 57 S.Ct. 461. In *Maryland Casualty Co. v.*

> *Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. (*MedImmune*, 127 S.Ct. at 771) (emphasis supplied)

T&C's claim that subject matter jurisdiction is proper here because "P/Kaufmann ***could*** bring the previously [five year old] threatened action against T&C for copyright infringement" (T&C Memorandum at 5) (emphasis supplied) ignores the requirement that there be an immediate and real controversy for jurisdiction under the DJA. In *MedImmune*, the plaintiff vigorously argued against the claimed application of defendant's newly-issued patent (as compared to the rejected copyright here) to its valuable product for months before agreeing to make royalty payments "under protest", and commenced a litigation immediately after entering into a new license with the defendant. See Complaint in *MedImmune* at Exhibit A hereto, ¶¶ 18, 54-66, and district court decision in *MedImmune, Inc. v. Genentech, Inc.,* 2004 WL 3770589 *5 (C.D.Cal. April 26, 2004), *aff'd,* 427 F.3d 958 (Fed Cir. 2005), *reversed*, 127 S.Ct. 764 (2007) with unreported decisions at Exhibit B. T&C's claim that "MedImmune paid the defendant-licensor for approximately *three years* under the license agreement" before bringing suit (T&C Memorandum at 8) is wrong, as is the claim that the case involves "analogous facts" to this one. *Id.*

Similarly, in *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), the court found declaratory judgment jurisdiction based upon specific and current acts on the part of the patent holder (e.g., specific allegations of infringement with respect to existing patents) where the lawsuit followed immediately after failed negotiations involving lengthy written submissions, detailed presentations, exchanges of letters, a number of meetings, and drafting of potential license agreements. *SanDisk*, 480 F.3d at 1375-76. The remaining cases cited by T&C also involve temporally significant disputes between the parties relating to the claim for declaratory relief, which

is conspicuously absent here. *Teva Pharmaceuticals USA Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330 (Fed. Cir. 2007)(declaratory judgment action followed actual lawsuit commenced over claimed infringement of related patents[3]); *Ritz Hotel, Ltd.*, 384 F. Supp. at 678 ("For more than twenty years, the parties have been engaged in opposition proceedings before the Trademark Trial and Appeal Board ... of the United States Patent and Trademark Office," and lawsuit at issue was filed on the very day that settlement negotiations over claims of infringement broke down"); *Fight For Children, Inc. v. Fight Night, Inc.*, 1997 WL 148643 at *2 (D.D.C., March 26, 2007)("During that three-year period, however, the parties were engaged in settlement negotiations. Thus, it appears that the threat of litigation did not dissipate between 1993 and 1996. This pending complaint was filed only after negotiations broke down."); *Starter Corp. v. Converse, Inc.*, 84 F.3d 592 (2d Cir. 1996)(reference to "unambiguous communication to [plaintiff] of [defendant's] intent to bring an infringement suit should [plaintiff] engage in the sale of footwear bearing [defendant's] House Marks" preventing immediate sale of goods). The only claimed discussion of a copyright in this case occurred over five years ago.

T&C does not deny that in April, 2002 it found itself caught with its hand in the proverbial "cookie jar." Indeed, it admits that "... T&C used P/Kaufmann's swatch as a basis for its own fabric". (T&C Memorandum at 1) T&C sampled the Zephyr fabric from P/Kaufmann for possible use in a shower curtain (which concept was proposed by P/Kaufmann), but instead of purchasing the fabric through P/Kaufmann, T&C proceeded to copy the pattern and concept, creating what it called

3 *Teva* is uniquely directed to the issue of jurisdiction under the Abbreviated New Drug Application ("ANDA") statute. The Court held that the declaratory-judgment plaintiff had established an "actual controversy" because (1) the patent owner had listed all five patents in the Orange Book (thereby statutorily representing that "a claim of patent infringement could reasonably be asserted" for each patent); (2) the declaratory-judgment plaintiff had submitted an ANDA certifying that it did not infringe the patents (which, by statute, is itself "an act of infringement"); and (3) Congress had enacted at least three statutory provisions that specifically permit an ANDA applicant to file a declaratory-judgment action if the patent owner has not brought an infringement action within 45 days. *Id.* at 1341-45. Clearly, none of the reasoning in *Teva* would apply here since this is not an ANDA case. The only filings at issue in this case were copyrights registrations, and those were rejected. Complaint, ¶¶ 22-23.

the "Parachute" shower curtain.[4] Within a few days after P/Kaufmann confronted T&C about the Parachute shower curtain, and one day after a meeting on the matter, the parties entered into the April 19, 2002 Agreement.

According to T&C, it agreed to purchase the Parachute shower curtain through P/Kaufmann under the Agreement only because P/Kaufmann executive Lee Kabat claimed on April 18, 2002 that Zephyr was copyrighted and threatened that P/Kaufmann would sue T&C over the design. (Mr. Kabat also allegedly threatened at that time to make the national retailer, Bed, Bath & Beyond, aware of what T&C had done.) The April 18, 2002 meeting was the last claimed statement of any kind by P/Kaufmann to T&C about a copyright in Zephyr before this lawsuit was filed on April 19, 2007, a fact clearly distinguishing this case from any relied on by T&C.

**a. <u>The Existence of a Claimed "License" For Parachute Is Irrelevant</u>.**

The critical issue before the Supreme Court in *MedImmune* was whether the Federal Circuit correctly held that a patent licensee cannot establish an Article III case or controversy with regard to the validity, enforceability or scope of a patent because the payment of royalty fees "obliterates any reasonable apprehension" that the licensee will be sued for infringement." *MedImmune,* 127 S. Ct. at 768. So the question was whether the plaintiff's own acts (i.e., paying royalties under the license agreement, but only "under protest"), can cause an otherwise obvious fear of suit to be eliminated, or at least diminished, causing the "dispute no longer to be a case or controversy within the meaning of Article III." *MedImmune*, 127 S. Ct. at 772.

The Supreme Court in *MedImmune* concluded that the requirements of a case or controversy were met by the involuntary nature of the royalty payments in that case. 1275. S.Ct. at 772

---

4 There is no claim of any copyright registration for T&C's Parachute. However, T&C claims that "during the relevant time period, an administrative assistant at T& C simply registered T&C's designs as a ministerial task and in the ordinary course of its business." T&C Memorandum at 18, fin. 10. As such, there may be registrations for Parachute, unless T&C recognized that it could not be copyrighted.

(citations omitted). According to the Court, Article III "d[oes] not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff 'bet the farm', so to speak, by taking the violative action" when faced with a genuine threat of enforcement. *Id.* Even if the April 19, 2002 Agreement here is considered a "License Agreement" (Complaint, ¶ 19[5]), and there was some evidence of immediate and real conflict over an enforceable copyright in Zephyr in 2007 (which there is not), T&C chose to breach the contract thereby rendering the result in *MedImmune* moot in this case. T&C has already "bet the farm" by breaching the Agreement[6] and tellingly, was not subjected to a federal copyright claim. See Mitnick Declaration, Exhibit A.

**b. The Failure Of T&C To Raise Its Claimed Recent Discovery About Zephyr Is Fatal To The Jurisdictional Claim.**

As detailed above, the Complaint in this case does not describe any claims by P/Kaufmann about a copyright in Zephyr (and none at all with respect to Parachute) in the last five years. T&C's opposition reveals, however, that there was ample opportunity in recent months for dialogue on the subject.. T&C, however, chose to avoid such communications.

We are told that T&C counsel many months ago conducted copyright searches for Zephyr and "discovered" that there is no registered copyright for the pattern, and that copyright registrations were in fact denied in 2001 and 2004. Mitnick Declaration, ¶¶ 6-8. T&C did not raise these claimed discoveries with P/Kaufmann, or inquire as to the existence of any further applications or the status of those that were rejected (see Mitnick Declaration, ¶ 9), proceeding instead with this lawsuit.

The failure of T&C to address the results of its belated due diligence search of publicly-available sources further distinguishes this case from those cited in the T&C opposition. The parties

---

5 As noted in P/Kaufmann's motion, the Agreement makes no reference to "licensee", "copyright" or payment of "royalties" but T&C nonetheless contends that the contract is a "License Agreement." In its opposition T&C contends that the April 19, 2002 e-mail contains only "[s]ome of the terms of the parties' agreement." T&C Memorandum at 4, fn. 3. T&C does not identify the provisions allegedly agreed to but not memorialized in any writing.

6 In *MedImmune*, the product in controversy represented "80 percent of [plaintiff's] sales revenue." 127 S.Ct. at 766.

in *SanDisk*, for example, had extensive, two-way communications in the months preceding the lawsuit which made the confines of their dispute clear, and the only question was whether the parties would be able to resolve their differences peacefully, or whether they would instead end up in court. *SanDisk,* 480 F.3d at 1376. By contrast, there is no record as to P/Kaufmann's current position with respect to copyright protection for Zephyr, and therefore no basis for T&C to claim to fear a copyright claim by P/Kaufmann today.

**c. T&C Ignores the 2004 Rejection Of The Copyright Registration For Zephyr.**

Finally, even assuming a possible dispute over copyright protection in Zephyr in 2002, it is far more uncertain when T&C filed suit. As uncertainty regarding the parties' dispute increases, the likelihood that declaratory-judgment jurisdiction exists obviously decreases. In *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361 (Fed. Cir. 2004), for example, the court held that "[t]he greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject-- in short, detached from eventual reality." *Id.* at 1379. *Sierra* is instructive here. Quoting the test in *Maryland Casualty*, 312 U.S. at 273 -- the same test applied by the Supreme Court in *MedImmune* -- the court held that the declaratory-judgment plaintiff had not carried its burden to prove that the dispute was of sufficient "reality" to warrant issuance of a declaratory judgment since the design of the accused product was "fluid and indeterminate" on the date the complaint was filed. *Sierra,* 363 F.3d at 1378-80.

Given the documented rejections of copyright registration in 2004, from which no appeal was taken by P/Kaufmann, it is obvious that T&C does not face the same risk of an infringement suit as the plaintiffs in *MedImmune*, *SanDisk* or *Teva* where relevant patents were in fact issued and the dispute involved whether they applied to a product or are invalid. There is no copyright in this case,

as determined by the Copyright Office. Moreover, before filing suit, T&C did not bother to determine if P/Kaufmann did in fact intend to contest the three year old rejection. The failure of T&C to do more than describe a copyright action as something that P/Kaufmann "could bring" (T&C Memorandum at 2 and 5) based on a five-year old comment is fatal to Count I; declaratory judgment actions are for real and immediate disputes, not theoretical or hypothetical ones.

**II. A Copyright Claim Is Only Theoretical.**

While it is *theoretically possible* that P/Kaufmann could bring a copyright action against T&C, that possibility does not create an "actual controversy" under Article III. There is no disputing that P/Kaufmann did not seek relief against the Copyright Office following the rejections of the registrations for Zephyr in 2001 and 2004 (Complaint, ¶¶ 22-23), and did not bring an action under the Administrative Procedure Act to overturn the rejections as an abuse of discretion. *Atari, Inc. v. Oman*, 979 F.2d 242, 243 (D. C. Cir. 1992)("Testing the Register's disposition only for 'abuse of discretion'.... "); *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 497 (S.D.N.Y. 2005) (reviewing a refusal of registration under the section 706(2)(A) "abuse of discretion" standard).

Even a direct claim of copyright infringement against T&C under Section 401 would involve significant deference to the determinations made by the Copyright Office, which could also join the action. Quoting *Beverly Hills Design Studio (N.Y.) Inc. v. Morris,* 1989 WL 85867 (S.D.N.Y. July 26, 1989):

> Although the Copyright Office refused to register plaintiffs' patterns, rejection of the application does not bar plaintiffs' copyright claim. 17 U.S.C. § 411(a). However, the plaintiffs must establish that the items were properly subject to copyright. That burden is heavy: the determinations of the Copyright Office ... are entitled to considerable weight. That is especially so here where the same applications were rejected ... on two separate occasions. Moreover, the decision to register an article rests in the sound discretion of the Register of Copyrights, and the scope of judicial review is limited to whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise

> not in accordance with law.' *Gemveto Jewlery Co. v. Jeff Cooper, Inc.*, 568 F.Supp. 319, 330 (S.D.N.Y. 1983) (footnotes omitted).

While P/Kaufmann no doubt filed the copyright registrations in good faith believing Zephyr to be copyrightable, it clearly chose not to pursue the matter after its registration was rejected in 2004. What is missing from the Complaint (because it does not exist) is some recent fact from which T&C could argue that P/Kaufmann intends to pursue such an unlikely and difficult copyright infringement action against it (and the Copyright Office), to effectively challenge the 2004 rejection. Since there are no such communications, T&C cannot legitimately allege that, when it commenced its action for declaratory relief in 2007, it had a real and/or immediate fear of copyright infringement liability over the Parachute shower curtain in April 2007.

## III. <u>The Court Should Dismiss The Complaint Under Its Discretionary Authority</u>

This court is not required to exercise jurisdiction to address the merits of the action, as it retains discretion under the DJA to decline jurisdiction. *Public Serv. Comm'n v. Wycoff Co.*, 73 S.Ct. 236 (1952); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary.") The application of such discretion is clearly warranted here.

Even if this Court were to find an actual controversy exists within the T&C pleading, the issue of subject matter jurisdiction will not be at issue after an Answer is served. Once P/Kaufmann admits to the critical allegations of Count I (i.e., that there is no copyright), the only basis for subject jurisdiction will be lost. See Fed. R. Civ. P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") Alternatively, based on the 2004 rejection of P/Kaufmann's copyright registration for Zephyr, P/Kaufmann could execute a covenant or agreement not to bring a federal copyright infringement suit against T&C regarding the issues at hand, and would have done so if asked. E.g.,

*Super Sak Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058, *cert. denied*, 516 U.S. 1093 (1996); *Evans Medical Ltd. v. American Cyanamid Co.*, 980 F.Supp. 132, 136 (S.D.N.Y. 1997).

## CONCLUSION

Declaratory judgment standing does not depend on whether there ***could*** be some "copyright" claim asserted, but whether the copyright claim represents a real and substantial controversy between the parties at the time the suit is brought. If no actual case or controversy under Article III exists between, the court lacks subject matter jurisdiction. Accordingly, P/Kaufmann respectfully requests that the Complaint be dismissed in its entirety.

Dated: New York, New York
July 13, 2007

PHILLIPS NIZER LLP

By: S/ Michael Fischman
Michael S. Fischman (MSF 7245)

666 Fifth Avenue
New York, NY 10103-0084
(212) 977-9700

Attorneys for Defendant *P/Kaufmann, Inc.*